Frank STOFFELS, et al., on behalf of the SBC CONCESSION PLAN and all other persons similarly situated, Plaintiffs,

v.

SBC COMMUNICATIONS, INC., and the SBC Telephone Concession Plan, Defendants.

No. CIV.A.SA–05CA0233WWJ.

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 3, 2006.

---

R. Joseph Barton Cohen, Milstein, Hausfield & Toll, P.L.L.C., Washington, D.C., and Marc I. Machiz, Cohen, Milstein, Hausfield & Toll, P.L.L.C., Philadelphia, Pa & Les Mendelsohn of Les Mendelsohn & Associates, San Antonio, TX, for plaintiffs.

John L. Carter, Vincent & Elkins, Houston, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

JUSTICE, Senior District Judge.

Before the Court for consideration is Defendant's Motion to Dismiss. Defendant moves the Court to dismiss the Plaintiffs' First Amended Class Action Complaint ("Complaint"), for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons stated herein, Defendant's motion will be DENIED.

## BACKGROUND

### I. Legal Framework and Parties

This is a civil enforcement action brought under section 502(a)(1)(B), (a)(2), (a)(3) and (c)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1132(a)(1)(D), (a)(2), (a)(3), and (c)(3) concerning Defendant SBC Communications, Inc.'s ("SBC") management of an alleged "defined benefit" retirement plan known as the "Telephone Concession." For purposes of disposing of this motion, Plaintiffs' allegations are assumed to be true, and it is Plaintiffs' description of the Telephone Concession that

guides the Court's analysis of whether Plaintiffs have submitted a claim upon which relief can be granted.

This is a class action lawsuit. The Plaintiffs are Frank Stoffels, a retiree of SBC Pacific Telesis, a subsidiary of Defendant SBC; Linda Villafane, a retiree of Ameritech, also an SBC subsidiary; and, Sid Wycoff, a former employee of Pacific Telesis. Am. Compl. ¶¶ 9–11. Plaintiff Carol Jean Jacobi has been voluntarily dismissed from this action. Dock. # 21. Plaintiffs bring this action on behalf of themselves, and a class consisting of all persons who are either retirees of SBC (or its predecessors) and its subsidiaries who actually received the Telephone Concession benefit after they retired; or, current and former employees of SBC with more than five years of service during the time that SBC maintained the retirement benefit. Am. Compl. ¶ 36.

Defendant SBC Communications, Inc. is a holding company incorporated under the laws of the State of Delaware with its headquarters and principal offices located in San Antonio, Texas. Am. Compl. ¶ 12. SBC is alleged to be both the "plan sponsor" of the Telephone Concession, and the "plan administrator," within the meaning of ERISA, 29 U.S.C. § 1002(16)(a) and (B). Plaintiff alleges that by establishing an ERISA pension plan, and by virtue of being the plan's sponsor and administrator, SBC is obligated to comply with ERISA's various requirements governing pension plans. Am. Compl. ¶ 13. Defendant SBC Telephone Concession Plan is alleged to be the actual Telephone Concession benefit. Am. Compl. ¶ 14. To avoid confusion, the term "Defendant" as used in this memorandum opinion and order refers to SBC Communications, Inc. The terms "Telephone Concession," and "Concession" refer to the plan or program of benefits allegedly promised by SBC to its retirees.

## II. The Telephone Concession

Plaintiffs describe the Telephone Concession as originally offered to "retirees" who were receiving a "service pension" or a "disability pension" from SBC's (and its predecessor's) pension plan. Am. Compl. ¶ 1. Plaintiffs contend that by informing employees that they would receive the Concession along with a retirement or disability pension, Defendant SBC established a "defined benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(35). *Id.* A defined benefit plan is defined as a "pension plan other than an individual account plan." *Id.* A "pension plan" is defined in 29 U.S.C. § 1002(2)(A) as:

> . . . any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) *provides retirement income to employees,* or (ii) *results in a deferral of income by employees for periods extending to the termination of covered employment or beyond*—regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

Plaintiffs describe the Telephone Concession as "the benefit SBC informed employees that they would receive upon retirement or that Defendant SBC actually provided to retirees, together with the administrative scheme and source of payment used to deliver that benefit." Am. Compl. ¶ 15. Plaintiffs' allegations "do[ ] not include [ ] any Telephone Concession benefit conferred on active employees during their employment with SBC." *Id.* In support of Plaintiffs' allegation that the Telephone Concession constitutes an

ERISA pension plan, Plaintiffs point to a brochure issued by the regional "Baby Bell" companies—prior to the divestiture of AT & T—which describes the benefit as:

> TELEPHONE SERVICE AFTER RETIREMENT—Effective with your retirement, charges for your residence will be paid by this Company. This means that, except for a few special types of service, you will receive free local service and be allowed a reasonable amount of toll service over Bell System or connecting lines within the continental United States and Canada during your lifetime..., After retirement, if you take up residence in an area not served by [the Company] this concession still applies.

The 1984 court-ordered divestiture of AT & T and its twenty-two regional companies resulted in a reorganization into seven separate companies, one of which became Southwestern Bell Communications, or "SBC." Am. Compl. ¶ 19. Plaintiffs allege that, as part of the court-approved terms of divestiture, the new companies, including SBC, were required to continue providing the Telephone Concession to retirees. Am. Compl. ¶ 20. SBC engaged in several later expansions or acquisitions, to form Defendant SBC Communications, Inc. Am. Compl. ¶ 21. Plaintiffs allege that at the time of each acquisition, SBC agreed to continue to provide the Telephone Concession to retirees. *Id.*

Plaintiffs further allege that SBC informed its retirees at some point after the divestiture of AT & T that the benefits would be distributed in two ways. First, for retirees of SBC and its predecessors living outside the SBC service area, the benefit was conferred by mailing those retirees a check for a set amount each month that was intended to cover the cost of local and local-toll service, though retirees were not required to submit proof of any phone charges or service. Second, for retirees living within SBC's service area, the same or similar amount was deducted from their phone bill. Both the direct payments and the phone bill deductions were taxable income to the retirees. Am. Compl. ¶ 24.

Plaintiffs allege that SBC altered or reduced the Concession benefit illegally several times. First, Plaintiffs contend that in January 2003, Defendant SBC sent a letter to SBC retirees living outside the SBC service area announcing that the monthly payment would be reduced to $25 monthly, payable in quarterly installments of $75. Am. Compl. ¶ 28. In-area retirees were notified that their monthly benefit would be similarly reduced. Both sets of retirees were notified that they were required to select SBC as their local and long distance carriers, if possible. Retirees and employees were offered a 10% discount on long distance services. Am. Compl. ¶ 29.

The next alteration alleged by Plaintiffs occurred in March 2004, but addressed only benefits aimed at current employees. For employees with at least thirty years of service, their benefit had been free; that is, they received a 100% reimbursement. Am. Compl. ¶ 30. The change required them to pay $20 per month for their telephone service. *Id.* In addition, the March 2004 alteration eliminated the Concession for out-of-area employees, "in lieu of a one time payment of $150." *Id.* Plaintiffs allege that this alteration works as a reduction or elimination of the benefits these employees were due to receive as retirees. *Id.*

Plaintiffs next claim that in January 2005, SBC informed retirees who retired prior to 1999 that they must enroll in a program called "SBC@Home," in order to keep their Concession benefits. Under SBC@Home, those retirees were to receive a 100% Concession for local service

and long distance, and $20 for local toll service. For retirees who retired after 1999, SBC would provide a 50% reduction in local service charges, but would not provide local toll or long distance benefits. Am. Compl. ¶ 31.

Finally, Plaintiffs allege that SBC further amended the Concession in May or June 2005, when it announced that $25 cash benefits paid to out-of-area retirees would be cancelled and replaced with 600 minutes of free domestic long distance calls, provided the retirees registered for the new plan. Am. Compl. ¶ 32. Plaintiffs allege that SBC justified such alterations and reductions to the Concession by "suggest[ing] that factors such as '[t]oday's slow economy and unfavorable regulatory climate' has 'forced SBC to make [these] decisions.'" Am. Compl. ¶ 33.

### III. Defendant's Motion To Dismiss For Failure to State a Claim

Plaintiffs have alleged that the conduct of SBC in governing, altering, and maintaining the Concession failed to comply with *every* ERISA provision applicable to defined benefit plans. Am. Compl. ¶ 2. Plaintiffs have submitted fourteen separate counts, and request various forms of relief, including reformation of the Concession plan, and an order requiring SBC to fund the Concession in accordance with ERISA. Am. Compl. ¶ 5. However, at this stage in the litigation, a single, fundamental issue is before the Court: Does Plaintiff's Amended Complaint state a cognizable cause of action, which if proved, could give rise to relief that is within this Court's power to grant and execute upon the parties?

Defendant's motion to dismiss contends that Plaintiffs' Amended Complaint falls short of asserting a claim upon which relief can be granted because the allegations fail to describe the Concession as an ERISA "pension plan," as defined by that statute.

Dock. # 14 at 1–2. Defendant's motion contends that because the Concession is not an ERISA pension plan, no aspect of the Concession program is governed by any of ERISA's requirements. Thus, they maintain that no claim is asserted by the Plaintiffs, and their Amended Complaint should be dismissed. Dock. # 14 at 1. Defendant's motion, therefore, raises a single question: Is the Concession, as alleged in Plaintiffs' Amended Complaint, an ERISA "pension plan" as defined in 29 U.S.C. 29 U.S.C. § 1002(2)? The court concludes, based on the following analysis, that Plaintiffs have alleged an ERISA pension plan.

### ANALYSIS

#### I. Rule 12(b)(6) Legal Standard

Rule 12(b)(6) motions "should not be granted unless 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1969)). SBC's Rule 12(b)(6) Motion to Dismiss should only be granted if, viewing the Complaint in the light most favorable to the government, the Complaint fails to *allege* facts sufficient to state a cause of action.

#### II. Rule 12(g) Should Not Be Applied Strictly In This Case to Bar Defendant's Second Pre–Answer Motion for Failure to State a Claim

Plaintiffs initially argue that Defendant's motion to dismiss is a "successive motion"

and hence is barred by FED. R. CIV. P. 12(g). Rule 12(g) provides that "[i]f a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party which [Rule 12] permits to be raised by the motion, the party shall not thereafter make a motion on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Rule 12(h)(2), in turn, preserves a defense based on failure to state a claim—even when that defense was available, but not included, in a previously submitted Rule 12 motion. Rule 12(h), however, limits the stages at which a party may raise this defense after the initial Rule 12 motion. "Any objection for failure to state a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." FED. R. CIV. P. 12(h). Thus, Rule 12(g) appears to bar successive 12(b)(6) motions, but Rule 12(h) preserves the defense of failure to state a claim so that it can be raised in a later motion.

In this case, Plaintiffs filed an initial complaint, which prompted Defendants to file a Rule 12(b)(6) motion to dismiss for failure to state a claim (Dock.# 4). Defendant's first 12(b)(6) motion argued that SBC was immune from suit by Plaintiff Stoffels because SBC, as the parent company of Plaintiff's employer, never employed Plaintiff directly. Dock. # 4 at 2–3. Plaintiff opposed that motion and filed an amended complaint which added new plaintiffs and added two new counts. Dock. # 9 (Am Compl.). The Amended Complaint repeated the essential allegation—that the Telephone Concession Plan constituted an ERISA pension plan—which Defendants' second 12(b)(6) motion challenges. Indeed, Defendants' entire argument in its second motion to dismiss falls under the heading, "The Telephone Concession Is Not An Employee Benefit

Plan Regulated by ERISA." Dock. # 14 at 2. Consequently, it is clear that Defendants could have argued in their initial 12(b)(6) motion what they argue in their second 12(b)(6) motion.

It is equally clear that Rule 12(h)(2) does not provide an exception to Rule 12(g)'s bar against successive 12(b)(6) pre-answer motions. Rule 12(h)(2) applies only to arguments that are raised under Rule 7(a), by motion for judgment on the pleadings, or at trial. Defendants' second 12(b)(6) motion simply does not fall into any of these three categories.

 A review of the relevant authorities confirms that Rule 12(g) normally bars successive pre-answer motions to dismiss. Professors Wright and Miller state that the ban against successive pre-answer motions extends to the three "substantial defenses" listed in 12(h)(2), including failure to state a claim upon which relief can be granted under Rule 12(b)(6). 5C Wright & Miller, *Fed. Prac. & Proc.* § 1385. "The right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion." *Id.* Professor Moore expresses a similar interpretation of Rule 12:

> Rule 12 provides exceptions to the waiver resulting from Rule 12(g)'s prohibition against successive motions in Rule 12(h)(2), because certain defenses are considered so fundamental that they may be raised even during trial. If omitted from the initial motion, those matters may not be raised in a successive Rule 12 motion, but may be raised in any Rule 7(a) responsive pleading, in a Rule 12© motion for judgment on the pleadings, or at trial on the merits.

2 James Wm. Moore et al., *Moore's Federal Practice* § 12.23, at 12–29. Additionally, "[t]he filing of an amended complaint will not revive the right to present by

motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." 5C Wright & Miller. *Fed. Prac. & Proc.* § 1388. Accordingly, Rule 12(g) applies even when the plaintiff voluntarily serves an amended complaint, as long as the defense was available when the first 12(b)(6) motion was made. However, there is an additional wrinkle in the procedural history of this action.

This case was transferred to the docket of the undersigned judge from the Honorable Royal Furgeson, United States District Judge, on October 21, 2005. Dock. # 28. Judge Furgeson's last order before transferring the case denied Defendants' original motion to dismiss as being moot. Dock. # 27. Judge Furgeson's order explained that "Plaintiff's filed an amended complaint that supercedes this original complaint. (In fact, SBC has already turned its attention to this amended complaint and directly challenged it with another motion to dismiss). The present motion is therefore moot, and this Court DENIES it." *Id.* Judge Furgeson's order makes clear that the Court considered Plaintiffs' Amended Complaint to wipe the slate clean, and to provide Defendants a new, unobstructed opportunity to submit a 12(b)(6) motion.

█ Additionally, and despite the weight of the authority, allowing consideration of a second 12(b)(6) motion to dismiss is not an entirely uncommon practice. Wright and Miller note that "in a limited number of cases the district court has exercised its discretion to permit a second

preliminary motion to present a Rule 12(b)(6) defense, although it was technically improper to do so." 5C Wright & Miller, *Fed. Prac. & Proc.* § 1385 (discussing *Donnelli v. Peters Securities Co.,* 2002 WL 2003217, *4 (D.Ill.2002), in which the court found that "defendants' motion was not filed for the purpose of delay and that adjudication of the instant motion will narrow the scope of this matter, greatly expediting resolution of the case.") The rationale of the *Donnelli* court is important to note, because it explained that *not* applying Rule 12(g)'s bar against successive 12(b)(6) motions was proper when the problem 12(g) was designed to prevent—unnecessary delay—was not a concern.

In this case, there is no evidence that Defendant intended delay; rather, the contrast in the defenses presented in the two 12(b)(6) motions indicates that Defendant abandoned a bad argument for a better one. The practical effect of considering Defendant's second 12(b)(6) motion would not be further delay, since Defendant's original motion was still pending when the second motion was submitted.[1] Furthermore, Rule 12(h)(2)—though clearly by its language *not* intended to allow successive Rule 12(b)(6) motions [2]—*is* intended to preserve the defenses listed therein, including a 12(b)(6) failure to state a claim defense, by permitting these defenses to be raised at other times in the case before entry of final judgment. A strict application of Rule 12(g) would result in the denial of Defendant's second 12(b)(6) motion, but Rule 12(h)(2) would allow Defendants to raise the defense of failure to state a

---

**1.** Of course, Plaintiffs' lawyers went to the trouble of responding with a 10–page brief in opposition to Defendants' original motion to dismiss, which certainly weighs against consideration of a successive motion that was submitted for no better reason than a failure to respond adequately in the first motion.

**2.** *But see, MCW, Inc. v. Badbusinessbureau.com,* 2004 WL 833595, 2004 U.S. Dist. LEXIS 6678 (N.D.Tex.2004) (holding that Rules 12(b)(6) and 12(h)(2) operate to exempt a second Rule 12(b)(6) *motion* from Rule 12(g)'s consolidation requirement).

claim on summary judgment or at trial. *See* 5C Wright & Miller, *Fed. Prac. & Proc.* § 1392 at 528 [3] Allowing Defendant's second motion would simply permit consideration now of a defense that would otherwise be raised at a later stage, presumably the summary judgment stage; for that reason, there are no dilatory effects created by considering the defense at this stage.[4] Indeed, Professor Moore notes that because the Rule 12(b)(6) defense is so basic that it cannot be waived, "the court might properly entertain a second motion if it were convinced it was not interposed for delay and that addressing it would expedite disposition of the case on the merits." *Id.*

It is found that a more permissive approach to this problem, when intended to advance the central purpose of 12(h)—the preservation of certain defenses—is appropriate when delay is not a concern. Therefore, it is concluded that because Judge Furgeson dismissed the Defendants' first Rule 12 motion *without* consideration, and since consideration of Defendants' second Rule 12 motion would not result in undue, or even avoidable, delay, this Court is now compelled to give consideration to Defendant's second Rule 12 motion.

## III. Consideration of a Motion To Dismiss For Failure to State a Claim Is Proper Even though the Existence *Vel Non of* An ERISA Plan Is a Question of Fact.

 It is unquestioned that the issue of whether an employee or retiree benefit exists is a matter to be determined by the finder of fact based on the evidence adduced. *See McDonald v. Provident Indemn. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir.1995) (citing Fed. R. Civ P. 56© in its review of the District Court's decision to grant summary judgment). However, this proposition alone does not require Defendant's motion to dismiss to be denied. Rather, the Court is required to determine whether the Plaintiff has *alleged* a set of facts that, if true, sustain a cause of action under ERISA. In other words, a motion to dismiss tests the legal sufficiency of the complaint. Indeed, as Defendant's motion points out, a number of courts have properly dismissed cases brought under ERISA for failure to state a claim. *See Frazier v. American Airlines, Inc.* 2004 WL 2223298, at *5. *Frazier*, for example, held that dismissal was proper because plaintiffs alleged facts that could not sustain a claim that the benefit at issue qualified as an ERISA pension plan. At issue in that case was travel benefits, specifically the right to "stand-by" seating on flights that had vacant seats available at the time the flight was due to depart. The controlling authorities stated clearly that the precise benefit alleged by the plaintiffs in *Frazier*, free stand-by seats, did not constitute pension benefits because it was a "no-additional-cost service," and provided no "income" for ERISA purposes. *Id.* at *5. Because plaintiffs alleged that they received benefits that, as a matter of law, did not implicate ERISA, it was held that the compliant did not state a cause of action under ERISA, and dismissal of the claim was appropriate.

---

**3.** Miller and Cooper note that "if a party makes a preliminary motion under Rule 12 and fails to include one of the Rule 12(h)(2) objections, she has not waived it, even though, under Rule 12(g), the party may not assert the defense by a second pre-answer motion." 5C Wright & Miller, *Fed. Prac. & Proc.* § 1392 at 526.

**4.** This, of course, is not to say that the Court's consideration of Defendant's 12(b)(6) motion will operate to bar Defendant from submitting a motion for summary judgment based on any pre-trial evidence adduced.

Defendant SBC simply asks the Court to declare that the Telephone Concession, as described by Plaintiffs, is in the same category as free stand-by seating provided by airline companies to their employees and retirees. No additional fact inquiry is necessary to make this determination. For that reason, the determination of whether the Telephone Concession, as described by Plaintiff's Amended Complaint, is a pension plan under ERISA, is an appropriate matter for adjudication in a motion to dismiss for failure to state a claim.

### III. Plaintiff's Amended Complaint Adequately Alleges the Retiree Telephone Concession Constitutes A Pension Plan Under ERISA.

In determining whether the Telephone Concession is an ERISA pension plan, the Court looks first to the statute. For a benefits program to be regulated by ERISA, it must meet the statutory definition of an "employee benefit plan" in 20 U.S.C. § 1002(3). Plaintiffs contend that the Telephone Concession meets this definition by qualifying as an "employee pension benefit plan, because it (i) *provides retirement income to employees,* or (ii) *results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 20 U.S.C. § 1002(2)(A).*

 Defendant's motion to dismiss appears to challenge only whether the Telephone Concession, as described in Plaintiff's amended complaint, qualifies as a pension by either providing retirement income, or by resulting in a deferral of income. In support of its motion, Defendant argues two points: that the Concession benefit is not related to an employee's retirement; and, that the Concession benefit does not qualify as "income" under ERISA. First, Defendant argues that the

Concession is an employee benefit that is merely extended to retirees in differing forms. Merely providing benefits to retirees does not create an ERISA pension plan, Defendant contends, when the benefit program was not created for the purpose of providing retirement income or of deferring income to retirement.

Defendant's other central argument is that the benefit provided by the Concession—free or discounted phone service—is not "income" under ERISA, and therefore does not provide either "retirement income" or result in a "deferral of income." Defendant asserts that the Telephone Concession at issue in this case is, like free stand-by airline seating, a "reduced cost service" that does not constitute an ERISA pension plan as a matter of law. Although Defendant acknowledges in its motion to dismiss that it made cash payments to some retirees, it maintains that this feature of the Concession does not convert the benefit program into an ERISA pension plan.

Defendant's motion forces the Court into an arguable area of ERISA law: determining whether a unique benefit, related to an employer's business, and made available to retirees meets the statutory qualifications of a pension plan. The relevant case law provides examples of points of demarcation within that mooted area to determine what is, and what is not, a pension plan under ERISA. As already mentioned, a prominent example from the case law of a benefit within this problematic area that does *not* qualify as an ERISA pension plan is the provision of stand-by airline seating to retirees of an airline company. *See, e.g., Constantine v. American Airlines Pension Benefit Plan,* 162 F.Supp.2d 552 (N.D.Tex. 2001). An example of a benefit that *is* within the scope of ERISA is a voucher program provided by a grocery store employer for its retirees in which the benefit

was a monthly $75 voucher redeemable for groceries. *See Musmeci v. Schwegmann Giant Super Markets,* 332 F.3d 339 (5th Cir.2003). Accordingly, Defendants argue the Telephone Concession is a similar benefit to free stand-by plan tickets, and that this case should be governed by the rationale of *Constantine.* Plaintiffs contend, in rebuttal, that the Telephone Concession benefit is nearly identical to the grocery-store voucher program that was deemed an ERISA plan in *Schwegmann,* and that the Court is bound by the holding and rationale of that case. Indeed, it is the rationale laid out by the Fifth Circuit in *Schwegmann* that guides this Court's judgment.

## A. The Amended Complaint Adequately Alleges That the Telephone Concession Is Based on Retirement.

Defendant bases much of its insistence that Plaintiffs' Amended Complaint falls short of alleging an ERISA pension plan on the ground that the Complaint acknowledges that Concession benefits flow to current employees, and merely continues into employee's retirement years. *See, e.g.,* Dock # 14 at 3. As an initial matter, Defendant's motion misrepresents Plaintiffs' allegations. For example, Defendant cites Paragraphs 18, 20, and 24 of the Amended Complaint for the proposition that Plaintiffs acknowledge that AT & T—predecessor to SBC—provided the Concession primarily to its employees, and merely continued their generosity into their employees' retirement years, even when those employees lived in areas that SBC did not service (hence the direct payments). Dock. # 14 at 4. In fact, paragraph 18 of the Amended Complaint alleges that AT & T issued a brochure—not

benefits—to its employees that described their telephone benefits once they retired. Am. Compl. ¶ 18. The Amended Complaint then quotes the brochure as saying, in part, "TELEPHONE SERVICE AFTER RETIREMENT—Effective with your retirement, charges for your residence telephone service will be paid by this company." *Id.* Paragraphs 20 and 24 of the Amended Complaint make no reference to any Concession benefits going to employees, and describe only benefits to retirees. Am. Compl. ¶¶ 20, 24.

Despite Defendant's specious account of Plaintiff's allegations, there are, indeed, some references in the Amended Complaint to the Concession being offered to employees as well as retirees. *See, e.g.,* Am. Compl. ¶¶ 15, 29, 30.[5] These references, however, do not indicate that Plaintiffs have alleged a benefits program that is aimed primarily at employees. Rather, Plaintiffs' allegations distinguish between the Concession program aimed at retirees (*see* Am. Comp. ¶ 18), and whatever Concession benefits, if any, that were conferred to active employees (*see* Am. Comp. ¶ 15). In other words, Plaintiffs' allegations, which must be considered true for purposes of evaluating the legal sufficiency of the Amended Complaint, describe Concession benefits to retirees that were triggered and administered separately from any benefits that went to active employees. The fact that either part of the overall Concession was aimed at employees, or that a separate Concession program existed for employees, does not render the Concession's retiree benefits plan beyond the scope of ERISA. That fact simply helps focus the Court's analysis in its attempt to determine whether Plaintiffs' al-

---

**5.** Paragraphs 29 and 30 describe reductions to Concession benefits to employees in order to allege improper amendments to the Concession plan in violation of ERISA's accrued benefit provisions. These paragraphs do not indicate that Plaintiffs' allegations describe an employee benefit program, as opposed to a pension plan.

legations describe a plan that provides a form of retirement income or that results in a deferral of income. *See* 29 U.S.C. § 1002(2); *Murphy v. Inexco Oil Co.*, 611 F.2d 570 at 575 (5th Cir.1980) ("the mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage.")

Defendant cites *Murphy* for the proposition that when an employee benefit begins during active employment, and continues into retirement, that renders the program outside the scope of ERISA coverage because such programs are designed to supplement regular compensation and are not contingent upon retirement. Dock. # 14 at 3–5. Though that is not the legal proposition that *Murphy* stands for, it is certainly an accurate description of the employee bonus program at issue in that case. It does not, however, describe the Telephone Concession at issue here. Under the *Murphy* bonus plan the employer, Inexco, gave bonuses to selected employees by assigning a specific royalty interest in a drilling "prospect," or block of mineral leases. *Murphy*, 611 F.2d at 572–73. The employee was given rights to receive some portion of the proceeds from the prospect, or royalties, when they accrued. *Id.* The assignment of an interest in a prospect was discretionary, based on Inexco management's evaluation of an employee's job performance. *Id.* Significantly, no assignments were made to retired employees, but employees who received interests continued to own those interests and receive the royalty payments during their retirement. *Id.* It is clear from the *Murphy* court's description of Inexco bonus program that any income provided in retirement was purely incidental to the compensation bonus program.

Plaintiffs have alleged that SBC created a very different kind of program; one that,

by SBC's own description, is "Telephone Service After Retirement," and that is "Effective with your retirement." Am. Compl. ¶ 18. Thus, Plaintiffs have sufficiently alleged that, by the express terms of the program, it is inextricably linked to an employee's retirement. In fact, the Amended Complaint adequately asserts that these benefits are not only related to retirement, but are *"effective* with [ ] retirement"—that is, the benefits at issue do not begin until retirement. This allegation effectively negates Defendant's contention that Plaintiffs' allegations focus on only a "portion," and an "ancillary" one at that, of the Concession. Dock. # 26 at 3.

### B. The Telephone Concession Provides "Income" to Retirees.

Defendants next argue that the Telephone Concession does not provide "income" for ERISA purposes, but merely provides to employees and retirees alike discounted service that the employer offers to the general public in the ordinary course of its business. This type of benefit has been dubbed a "no-additional-cost benefit" that is generally not, under the Internal Revenue Code, taxable income to employees who receive them from their employers. Defendant further contends that such "no-additional-cost services" cannot be considered to provide either retirement income, or a deferral of income, as a matter of settled law. Dock. # 14 at 8; Dock. # 26 at 3. In response, Plaintiffs argue that the Concession does provide "income," both in the form of cash payments and discounted telephone service. Am. Compl. ¶ 24; Dock. # 20 at 10.

Defendant's chief authority for this argument is *Constantine,* which held that travel benefits—free stand-by flights provided by American Airlines to its employees and retirees—are not considered pension plans under ERISA. Dock. # 14 at

8–10 (citing and discussing *Constantine*, 162 F.Supp.2d at 554). The *Constantine* court did little more than cite existing authority rejecting ERISA claims involving no-additional cost travel benefits.[6] However, *Schwegmann* expanded slightly on the rationale behind denying ERISA coverage in such a case. *Schwegmann* defended the holding in *Constantine* by emphasizing the fact that the stand-by seats were truly provided at *no* additional cost, including foregone revenue, to the employer. *Schwegmann*, 332 F.3d at 347. Specifically, these were seats given to employees and retirees of airline companies only when the seats would otherwise remain empty during the flight. *Id.*

In determining whether the grocery store vouchers constituted "income" for ERISA purposes, *Schwegmann* went on to distinguish such no-additional-cost services from the type of benefits that constitute income under the Internal Revenue Code, and are provided to retirees at some additional cost to the employer. Because the voucher program "did not just offer the goods for sale to its [retirees]—it provided them with a means to pay for them," the Fifth Circuit concluded that the program "conferred cash spending power, distinguishable from a program that simply allowed retirees to use their own funds to purchase groceries." *Id.* at 346.

Here, Plaintiffs have alleged that the Concession operated in two ways. First, for those retires that live within areas serviced by SBC, SBC provided a "set amount [which] was simply deducted from their phone bill." Amend. Compl. ¶ 24(b). This form of benefit is precisely the same kind of benefit at issue in *Schwegmann:* a

cash-equivalent that could only be used by retirees to purchase or the products or services sold by the former employer. *Compare Schwegmann*, 332 F.3d at 346 *with* Compl. ¶ 24(b). It is of no import that SBC simply deducted a certain portion from its retirees' telephone bills rather than issue vouchers. What the program was designed to do is what informs the Court's analysis, and, in this case, Plaintiffs have alleged a program through which SBC provided retirement income in the form of cash spending power to purchase SBC's product.

The second way in which Plaintiffs have alleged the Concession operated was to provide monthly checks to those retirees who lived outside areas in which SBC provided telephone service. Am. Compl. ¶ 24. These cash payments were allegedly made without presentation of a phone bill, and regardless of whether the recipient had incurred any charges on any telephone bill. Am. Compl. ¶ 24. Defendant argues against Plaintiffs' assertions that the cash payments are not covered by ERISA only by claiming that these direct payments, like the phone bill deductions, are not really linked to retirement. Dock. # 14 at 11; Dock # 26 at 7. Thus, Defendant contends that the this "ancillary" portion of the Concession also does not qualify as "retirement" or "deferred" income under ERISA (Dock. # 14 at 11) primarily by rehashing its argument that the Concession as a whole does not provide "retirement income," because the benefits are not "due to the recipient's retirement." Dock. # 26 at 7 (citing *International Paper Co. v. Suwyn*, 978 F.Supp. 506 (S.D.N.Y.1997), and "collecting additional cases" in support of that claim[7]). Once again, this simply

---

**6.** Despite Defendant's attempts to color the "airline travel benefit" opinions as a "clear line of controlling authority," (Dock. # 26 at 5), these authorities in fact contain sparse, if

any, analysis, as Plaintiffs note. Dock. # 20 at 9 (citing *Schwegmann*, 332 F.3d at 346).

**7.** If Defendants have actually finished collecting additional cases that render Plaintiffs alle-

does not negate Plaintiffs' allegations, which quote SBC's own brochure describing the Concession, that the benefits are "effective with [ ] retirement." As the Court has already discussed, Plaintiffs have made sufficient allegations that these benefits are tied to "retirement" to satisfy that element of ERISA. Defendants do not appear to deny that these payments are "income."[8] Thus, the Court finds that Plaintiffs have sufficiently alleged that the cash payment portion of the Telephone Concession provides retirement income to SBC retirees.

Additionally, the Court notes that the fact that SBC issued checks to retirees who live out of their service area indicates that, at least from SBC's perspective, credits given to in-area retirees were the equivalent to cash payments, in that they cannot be considered "no-additional cost," as, for example, free stand-by airline tickets can be. The fact that American Airlines does not offer cash payments to its retirees who live near airports that American does not service illustrates that there is a fundamental difference between the two types of programs. Thus, the fact that SBC supplemented its in-area benefits with cash payments to out-of-area retirees supports the Court's determination that Plaintiffs have sufficiently alleged in-area benefit as "retirement income" ERISA pension plan.

## IV. Deeming the Telephone Concession an ERISA Pension Plan Does Not Have Anomalous or Unworkable Results.

Defendants have included an additional argument that appears to focus on

ERISA's provision designed to protect retirees' "accrued benefits" in the event that a pension or welfare plan is amended, 29 U.S.C. § 1054(g). Dock. # 26 at 8–9. Defendant claims that "if the Concession were deemed to be a pension plan, it would, illogically, be one under which no employee or retiree had any accrued benefit entitled to protection under ERISA." Dock. # 26 at 9. Defendant's attempt to explain why the Concession benefits cannot "accrue" is limited to the following unsupported statements: "Indeed, an 'accrued benefit' in the context of the Concession is nonsensical. The Concession is telephone service. In the ever-evolving telecommunications field, the Concession benefit changes with the technology. To say that an employee 'accrued' telephone service in 1973 and therefore remained entitled to that benefit in 2005 makes no sense." *Id.*

As an initial matter, Defendants offer no legal basis for why this particular benefit, which Plaintiffs have sufficiently alleged is triggered by retirement, cannot "accrue" like any other pension benefit based on some duration of employment. After all, Plaintiffs have clearly alleged that the benefits are, and always have been, valued in dollar amounts. Furthermore, 29 U.S.C. § 1054(g) does not appear to unequivocally limit all ERISA's requirements to benefits that have "accrued." Rather, that section, which is cited by Plaintiffs' complaint, addresses how accrued benefits are to be treated in the event that a plan is amended.

The logical failings of Defendant's "logic" argument aside, this argument appears to be no more than a repetition of the

---

gations insufficient as a matter of law, it will evidently have to be brought to the court's attention in a later motion.

**8.** Defendant's motion states "The money received is alleged to be taxable income. However, that nuance should not somehow convert the Concession into an ERISA pension plan." Dock. # 14 at 11.

claim that, because the Concession benefits flow to current employees, the whole Concession plan, including the benefits that are "effective with ... retirement," is not a pension plan. Dock #26 at 8 ("If a benefit begins prior to normal retirement age (other than one that is payable at normal retirement age gut [sic] permitted under the plan to be paid earlier on an actuarially reduced basis), it is not an 'accrued benefit' that is entitled to protection under ERISA.") It may well turn out to be the case that Plaintiffs allegations regarding accrued benefits will turn out to be unsubstantiated; however, Defendant's motion to dismiss appears not to have even challenged whether Plaintiffs have alleged a set of facts that can support a claim that Defendant has mismanaged accrued benefits. As the Court has previously discussed, Plaintiffs have sufficiently alleged that the Concession—at least the part of it being challenged—is dependent upon retirement, and provides a form of income. These allegations are sufficient to survive Defendant's motion to dismiss.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted shall be, and is hereby, **DENIED**.